IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VENKANNA KANNA, M.D., | : | |
| | : | CIVIL ACTION NO. 2:08-cv-00242 |
| Plaintiff, | : | |
| | : | |
| vs. | : | JUDGE SARGUS |
| | : | |
| HON. JAMES B. PEAKE, SECRETARY, | : | MAGISTRATE JUDGE ABEL |
| UNITED STATES DEPARTMENT OF | : | |
| VETERAN AFFAIRS, | : | |
| | : | |
| Defendant. | : | |

**CASE-SPECIFIC JURY INSTRUCTIONS PROPOSED BY**
**PLAINTIFF VENKANNA KANNA, M.D.**

**PLAINTIFF'S PROPOSED**
**INSTRUCTION NO. 1**

**INTRODUCTION TO NATURE OF CLAIMS AND DEFENSES**

Dr. Kanna has made a claim under the federal law known as Title VII of the Civil Rights Act of 1964. Under Title VII, it is unlawful for an employer to intentionally discharge a person because of that person's race or national origin or both.

Dr. Kanna alleges that the Department of Veteran Affairs discriminated against him because of his race and national origin or both when the Director of its Chillicothe Medical Center terminated him from its medical staff. The Department alleges that Dr. Kanna was terminated because he engaged in three instances of intentional patient abuse on two days.

Dr. Kanna has alleged in response that what he did on those two days resulted in no harm to any patient and, in light of his years of competent service and the absence of any formal discipline in his record, was less likely to have motivated the Director of the Chillicothe Medical

1

Center to terminate him than the Director's stereotypical views of and condescension towards Asian Indian doctors and the Director's resentment about the number of them on the medical staff and the way they seemed to be lenient to one of their own race or national origin, Dr. Kanna.

The central question of fact for you to decide, therefore, is what more likely than not motivated the Director of the Chillicothe Medical Center to terminate Dr. Kanna. Dr. Kanna must prove by a preponderance of the evidence that at least one of the motivating factors for his termination was racial and/or national origin discrimination.[1]

As I will explain in detail, if the Director was actually motivated by what he honestly believed in his business judgment was dischargeable misconduct, then you must find for the Department. On the other hand, if the Director was actually motivated at least in part by discrimination against Asian Indian doctors to exaggerate what Dr. Kanna did on those two days into dischargeable misconduct, then you must find for Dr. Kanna.

If you find for Dr. Kanna, you will also need to consider damages, and I will later instruct you in detail on how to do that. For now, I will tell you that two types of damages may be awarded. One is back pay, which is the amount of salary and fringe benefits Dr. Kanna would have earned had he not been terminated minus the amount he did, or with reasonable diligence could have, earned since the date he was terminated. The other is compensatory damages, which is the amount you may award Dr. Kanna for such injuries as "emotional pain, suffering, inconvenience, mental anguish, [and] loss of enjoyment of life."[2]

---

[1] 42 U.S.C. § 2000e-2(m)("an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice"); 3C K. O'Malley, J. Grenig & W. Lee, FED. JURY PRAC. & INSTR. § 171.01 (5th ed.).

[2] 42 U.S.C. § 1981A(b)(3).

A third type of damages you may have heard about is punitive damages.  Under Title VII, punitive damages may not be awarded against a governmental employer.[3]  You are not to draw any conclusions about the absence of punitive damages or otherwise account for that absence.

If you find for the Department, you will not consider damages.

---

[3] 42 U.S.C. § 1981A(b)(1).

## PLAINTIFF'S PROPOSED
## INSTRUCTION NO. 2

## BURDEN OF PROOF

The person who claims that certain facts exist must prove them by a preponderance of the evidence. This duty is known as the burden of proof.

Preponderance of the evidence is simply the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, or of greater probative value. A preponderance simply means that something is more likely than not. It is the quality of the evidence that must be weighed. Quality may, or may not, be identical with quantity or the greater number of witnesses.

If the weight of the evidence is equally balanced, or if you are unable to determine which side of an issue has the preponderance, the party who has the burden of proof has not established such issue by a preponderance of the evidence.

In this case, the burden of proof is on Dr. Kanna to prove both discrimination and damages by a preponderance of the evidence. I will later instruct you on how that burden shifts to the Department on proving that Dr. Kanna failed to mitigate his damages.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence, regardless of who produced it.[4]

---

[4] K. O'Malley, J. Grenig & W. Lee, FED. JURY PRAC. & INSTR. § 104.01; E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 171.61.

## PLAINTIFF'S PROPOSED
## INSTRUCTION NO. 3

## INTENTIONAL DISCRIMINATION[5]

In order for Dr. Kanna to establish his claim against the Department, he has the burden of proving by a preponderance of the evidence that his termination was motivated by his race or national origin or both.  Dr. Kanna must prove that the Department intentionally discriminated against him, that is, his race or national origin or both was a motivating factor in the termination decision.

In showing that his race or national origin or both was a motivating factor, Dr. Kanna is not required to prove that his race or national origin or both was the sole motivation or even the primary motivation for the Department's decision to terminate him.  He need only prove that race or national origin or both played a motivating part in the Department's decision to terminate him even though other factors may also have motivated the Department.[6]

Dr. Kanna must show that the Department intentionally discriminated against him.  He is not required, however, to produce direct evidence of intentional discrimination.  Intentional discrimination may be inferred from the existence of other facts.[7]

The term "motivating factor" means a consideration that moved the Department toward its decision to terminate Dr. Kanna.[8]  The mere facts that Dr. Kanna is an Asian Indian and was discharged are not sufficient, in and of themselves, to establish his claim.[9]

---

[5] 3C K. O'Malley, J. Grenig & W. Lee, FED. JURY PRAC. & INSTR. § 171.20; E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 171.01; 171.20.

[6] 42 U.S.C. § 2000e-2(m)("an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice").

[7] 3C K. O'Malley, J. Grenig & W. Lee, FED. JURY PRAC. & INSTR. § 171.26; E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 171.26.

[8] 3C K. O'Malley, J. Grenig & W. Lee, FED. JURY PRAC. & INSTR. § 171.42.

[9] E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 171.20.

**PLAINTIFF'S PROPOSED
INSTRUCTION NO. 4**

**BUSINESS JUDGMENT**

Even if an employer is mistaken and its business judgment is wrong, an employer is entitled to make its own policy and business judgments. An employer may make those employment decisions as it sees fit, as long as it does not violate Title VII.[10]

The law requires only that an employer not discriminate against an employee because of his race or national origin.  So far as you are concerned in this case, an employer may discharge an employee for any other reason, good or bad, fair or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of the Department even though you personally may not favor the action taken and would have acted differently under the circumstances.  Neither does the law require an employer to extend any special or favorable treatment to employees because of their race or national origin.[11]

Thus, in determining whether the Department's stated reason for its decision to terminate Dr. Kanna was a pretext for discrimination, you may not question its business judgment.  Pretext is not established just because you disagree with the business judgment of the Department, unless you find that the Department's reason was a pretext for discrimination.[12]

In other words, "[a]n employer's business judgment * * * is not an absolute defense to unlawful discrimination."[13]  While you may not substitute your judgment for the Department's business judgment, "a decision to terminate an employee based upon unlawful considerations does not become legitimate because it can be characterized as a business decision."[14]

---

[10] E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 171.75.
[11] E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 171.20.
[12] 3C K. O'Malley, J. Grenig & W. Lee, FED. JURY PRAC. & INSTR. § 171.75.
[13] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)(*en banc*).
[14] *EEOC v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 835 (6th Cir. 1997).

Consequently, you may consider the reasonableness of the Department's business judgment "to the extent that such an inquiry sheds light on whether the [Department's] proffered reason for the [termination] was its actual motivation."[15]

---

[15] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)(*en banc*).

## PLAINTIFF'S PROPOSED
## INSTRUCTION NO. 5

### PRETEXT

A pretext for discrimination can be found when "a discriminatory reason more likely motivated the employer" than the nondiscriminatory reason it gave for a decision.[16]  There are three separate ways for Dr. Kanna to show pretext: (1) the Department lacked a basis in fact for believing he had committed intentional patient abuse; (2) the Department had such a basis in fact but was actually motivated at least in part by racial and/or national origin discrimination; or (3) intentional patient abuse is not a sufficient grounds for discharge.[17]

Dr. Kanna is alleging the second way of showing pretext.  Under the second way, Dr. Kanna must "admit[] the factual basis underlying the [Department's] proffered explanation and further admit[] that such conduct *could* motivate dismissal," but "attempt[] to indict the credibility of [the Department's] explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the [Department]."[18]

As I have instructed you, pretext may not be found just because you disagree with the business judgment of the Department.[19]

---

[16] *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).
[17] *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).
[18] *Manzer*, 29 F.3d at 1084 (emphasis in original).
[19] E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 171.75.

## PLAINTIFF'S PROPOSED
## INSTRUCTION NO. 6

### STEREOTYPING

Dr. Kanna claims that the Director of the Chillicothe Medical Center was motivated to terminate him by the Director's stereotypical views of and condescension towards Asian Indian doctors and the Director's resentment about the number of them on the medical staff and the way they seemed to be lenient to one of their own race and national origin, Dr. Kanna.  Stereotyping may reflect discriminatory intent.[20]  Stereotyping is a mindset that depends on "an inaccurate and denigrating generalization" and reasons that all members of a particular group are likely to act in a certain way.[21]

Dr. Kanna claims, for example, that the Director believed Asian Indian doctors could not communicate effectively with patients of the Medical Center and wanted more diversity on the medical staff because the patients would relate better to members of their own race or national origin or both.  Dr. Kanna further claims that the Director devalued Dr. Kanna's years of competent service and the absence of any formal discipline in his record because the Director believed that Asian Indians would stick together as a group and cover for one another.  Dr. Kanna claims as well that the Director had a condescending attitude toward Asian Indian doctors

---

[20] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 572 (6th Cir. 2003)(*en banc*)("The association of these stigmatizing beliefs with an adverse employment decision creates a genuine issue of material fact as to whether the employer was motivated, at least in part, by discriminatory intent based on those stereotypes."). *Accord Zhao v. State University of N.Y.*, 472 F.Supp.2d 289, 308-10 (E.D.N.Y. 2007)(Decisionmaker "liked to employ Chinese people because they work very hard and very long hours," a comment indicating that "she may have higher performance expectations for individuals of Chinese origin because of her belief in certain ethnic stereotypes.  * * * This type of stereotyping in employment decisions, if proven, is precisely the type of evil that Title VII is designed to prevent[.]"").

[21] *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993).

and resented both the number of them on medical staff and their vocal resistance, rather than passive acquiescence, to the changes he had proposed.[22]

---

[22] *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 64 (1st Cir. 1999)(footnote omitted)(supervisor's evaluations may have been "affected by some form of conscious animus or less conscious bias" given his "general disregard for [the plaintiff's] abilities and status" and the way he was "at times inappropriately upset or angry with" her).

## PLAINTIFF'S PROPOSED
## INSTRUCTION NO. 7

## CUSTOMER PREFERENCE

One aspect of the stereotyping that Dr. Kanna alleges is a preference the patients of the Medical Center may or may not have had for medical staff of their own race or national origin or both. I instruct you that making employment decisions at the Medical Center based on a presumed preference of patients for a particular race or national origin or both would violate Title VII.[23]

As you can understand, there was a time in the United States when patients, clients, customers, or others did not want to be treated, served, or interact with those from other races or national origins. Title VII was enacted in part to prohibit as a general matter any employer justifying discriminatory employment practices by honoring such segregation.

---

[23] *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 990-91 (5th Cir. 2005)(rejecting African-American applicant to be casino poker dealer because "these good old white boys don't want black people touching their cards" and "maybe I've been told not to hire too many blacks in the poker room."). *See also Bradley v. Pizzaco of Nebraska, Inc.*, 7 F.3d 795, 799 (8th Cir. 1993)(customer preference for clean-shaven deliverymen did not justify disparate impact on African-Americans); *Gerdom v. Continental Airlines, Inc.*, 692 F.2d 602, 609 (9th Cir. 1982)(customer preference for slim stewardesses did not justify sex-differential weight requirements).

## PLAINTIFF'S PROPOSED
## INSTRUCTION NO. 8

## QUOTAS

Another aspect of the stereotyping that Dr. Kanna alleges is a concern that the Medical Center had too many Asian Indians on its medical staff and should hire medical staff that more closely represented the racial and/or national origin composition of the patients. I instruct you that making employment decisions at the Medical Center based on a quota of doctors of one race or national origin or both would violate Title VII, as would making employment decisions based on more closely representing the racial and/or national origin composition of the patients.[24]

Again, as you can understand, there was a time in the United States when employers had quotas and only so many members of a particular race, national origin, sex, or religion could be hired. Those quotas were sometimes justified because they mirrored the composition of the patients, clients, customers, or others who interacted with the employees. Title VII was enacted in part to prohibit as a general matter any employer justifying discriminatory employment practices by using such quotas.

---

[24] *See, e.g., Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 276 (1986)(rejecting the "role model" theory because hiring based on the demographics of the student body "could be used to escape the obligation to remedy [hiring discrimination] by justifying the small percentage of black teachers by reference to the small percentage of black students"); *Robinson v. Shelby County Bd. of Educ.*, 566 F.3d 642, 654 (6th Cir. 2009)(discrimination in "directing that the racial ratio of the faculty match the racial composition of the student population as a whole").

# PLAINTIFF'S PROPOSED
# INSTRUCTION NO. 9

# BACKPAY

If you find that the Department violated Title VII, then, subject to the next instruction I will give you, you must award Dr. Kanna the amount of any wages and employment benefits that he proves, by a preponderance of the evidence, that he would have earned in his employment with the Medical Center had he not been terminated.  That amount should completely redress the economic injury Dr. Kanna has suffered and should reflect the base wages, including any raises, which he would have received, as well as sick leave, vacation pay, pension benefits and other fringe benefits he would have received.[25]

A discharged employee is not required to prove lost pay and benefits with precision.  Any uncertainty as to the amount to be awarded should be resolved against the Department.[26]

---

[25] *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988).  *See also Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983) (AA backpay award should make the claimant whole, that is, to place him in the position he would have been in but for discrimination. * * * Sick leave, vacation pay, pension benefits and other fringe benefits the claimant would have received but for discrimination should also be awarded.@).

[26] *See Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 628 (6th Cir. 1983) (AAny ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer.@).

**PLAINTIFF'S PROPOSED**
**INSTRUCTION NO. 10**

**MITIGATION**[27]

Under Title VII, Dr. Kanna was required to make every reasonable effort to minimize or reduce his damages for loss of compensation by seeking employment. This duty is referred to as "mitigation of damages." The Department must prove by a preponderance of the evidence that Dr. Kanna failed to mitigate his damages for loss of compensation. You will note that on mitigation of damages the burden of proof shifts to the Department,[28] and that burden is the same preponderance of the evidence that I earlier described to you.

If you determine that Dr. Kanna is entitled to lost compensation, you must reduce the loss by both (1) what he earned, and (2) what he could have earned by reasonable effort during the period from his discharge until the date of trial. Dr. Kanna was under a duty to accept employment that was substantially equivalent to the position he held at the Medical Center.

The Department may satisfy its burden only if it proves both that (1) there were substantially equivalent positions which were available; and (2) Dr. Kanna failed to use reasonable care and diligence in seeking such positions.[29] A substantially equivalent position must afford the employee virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.[30]

You must decide whether Dr. Kanna acted reasonably in not seeking or accepting a particular job. If you determine that he did not make reasonable efforts to obtain another

---

[27] 3C K. O'Malley, J. Grenig & W. Lee, FED. JURY PRAC. & INSTR. § 171.95; E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 171.20.

[28] *See Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 623 (6th Cir.1983) (AOnce a claimant establishes a prima facie case and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant.@).

[29] *Id.* at 624.

[30] *Id.*

substantially equivalent job, you must decide whether any damages resulted from his failure to do so.  You must not compensate Dr. Kanna for any portion of his loss of compensation resulting from his failure to make reasonable efforts to reduce that loss.

Reasonable diligence does not require the employee "to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so."[31]  Dr. Kanna was "only required to make reasonable efforts to mitigate damages, and is not held to the highest standards of diligence.  [His] burden is not onerous, and does not require him to be successful in mitigation."[32]

---

[31] *Ford v. Nicks,* 866 F.2d 865, 873 (6th Cir.1989).
[32] *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983).

**PLAINTIFF'S PROPOSED
INSTRUCTION NO. 11**

**COMPENSATORY DAMAGES[33]**

If you find the Department discriminated against Dr. Kanna based on his race or national origin or both, then you must determine an amount that is fair compensation for his damages. You may award compensatory damages only for injuries that he proves were caused by the Department's alleged discrimination.

The damages that you award must be fair compensation—no more and no less.

You may award damages for any injuries such as "emotional pain, suffering, inconvenience, mental anguish, [and] loss of enjoyment of life"[34] that Dr. Kanna experienced as a consequence of the Department's alleged discrimination.  No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages.  Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages that you decide to award, you should be guided by common sense.  You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation, or guess work.  On the other hand, the law does not require that Dr. Kanna prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the Department.

---

[33] 3C K. O'Malley, J. Grenig & W. Lee, FED. JURY PRAC. & INSTR. § 171.90; E. Devitt, C. Blackmar, & K. O'Malley, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 171.20.
[34] 42 U.S.C. § 1981A(b)(3).

Respectfully submitted,


By    */s/ John S. Marshall*
John S. Marshall (0015160)
(*jmarshall@marshallandmorrow.com*)
Edward R. Forman (0076651)
(*eforman@marshallandmorrow.com*)
MARSHALL AND MORROW LLC
111 West Rich Street, Suite 430
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

Attorneys for Plaintiff

**OF COUNSEL:**

Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
66871 Rayo del Sol
Desert Hot Springs, California, 92240-1871
(614) 203-1255
Fax (760) 288-2146


### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Christopher R. Yates Assistant United States Attorney, 303 Marconi Boulevard, Suite 200, Columbus, Ohio, 43215, on this 9th day of July, 2010.

By    */s/ John S. Marshall*
John S. Marshall (0015160)